529 S.E.2d 274

**The STATE, Respondent,**

v.

**Gary DuBose TERRY, Appellant.**

**No. 25085.**

Supreme Court of South Carolina.

Heard Oct. 5, 1999.

Decided March 13, 2000.

Rehearing Denied April 19, 2000.

Assistant Appellate Defender Robert M. Dudek, of S.C. Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General William Edgar Salter, III, all of Columbia; and Solicitor Donald V. Myers, of Lexington, for respondent.

WALLER, Justice:

Gary Dubose Terry was convicted of murder, first degree burglary, first degree criminal sexual conduct (CSC), and malicious injury to a telephone system. He was sentenced to death for murder, thirty years each for burglary and CSC, and ten years for malicious injury to a telephone. This case consolidates his direct appeal with the mandatory review provisions of S.C.Code Ann. § 16–3–25 (1985). We affirm.

## FACTS

The victim in this case, 47 year old Urai Jackson, was found beaten to death in her Lexington County home on May 24, 1994. The window on the carport door to her home had been broken out and the telephone wires had been pulled from the phone box. Victim's mostly nude body was found in the living room, and semen was found in her vagina. She had several blunt trauma wounds to the head, and a number of defensive wound injuries. The cause of death was blunt trauma with skull fracture and brain injury.

## ISSUES

1. Did the court err in refusing to permit Terry to introduce his own statement to police into evidence? Should the court, in any event, have permitted Terry to elicit testimony to the effect that he had given a statement in order to demonstrate his cooperation with police?

2. Did the court err in ordering Terry to disclose his Charter River Hospital records to the state?

## 1. ADMISSION OF TERRY'S STATEMENT

██ On March 24, 1995,[1] Terry gave a statement to police in which he maintained he had gone to victim's house and had consensual sex with her.[2] According to Terry, the victim became angered when he started to leave and grabbed him by the hair. He lost his temper and started hitting her with something. He couldn't recall the object but believed victim may have brought it with her from the bedroom.[3] He hit her several times then left.

At the outset of trial, Terry moved to suppress this statement, contending it was involuntarily given. The trial judge conducted a *Jackson v. Denno*[4] hearing and ruled the statement was admissible.

Terry elected not to testify at trial. When the state decided not to introduce the statement during the guilt or innocence phase of trial,[5] Terry contended he should be permitted to introduce it as a statement against his penal interest. The court ruled Terry could not introduce the statement.

Terry contends he should have been permitted to introduce his confession as a "statement against penal interest" under Rule 804(b)(3), S.C. Rules of Evidence (SCRE), because he was "unavailable"[6] as a witness by virtue of his exercise of his

---

1. He gave another statement on Jan. 17, 1995 which is not at issue in this appeal.

2. He had previously lived across the street from victim.

3. The bottom half of a pool cue victim generally kept for protection was missing from her home and was never recovered.

4. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

5. The state elected, instead, to rely on a fingerprint on the phone box which matched the print from Terry's right ring finger, and semen from Victim's vagina which matched Terry's DNA profile.

6. Under Rule 804(b), certain statements are not excluded by the hearsay rule if the declarant is unavailable as a witness. "Unavailable" is defined in 804(a) and includes situations in which the declarant is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement.

fifth amendment privilege against self-incrimination. We disagree.

Rule 804(b)(3) provides:

(3) Statement Against Interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and **offered to exculpate** the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. (emphasis supplied)

Initially, Terry's purpose in offering the statement was in an attempt to provide the jury with some evidence tending to reduce the crime from murder to manslaughter. Accordingly, as he intended to offer the statement to exculpate himself, it was not admissible "unless corroborating circumstances clearly indicate[d] [its] trustworthiness." We find no such corroborating circumstances.[7] *See State v. Doctor*, 306 S.C. 527, 413 S.E.2d 36 (1992) (testimony of three witnesses corroborated out of court confessions of declarants). Accordingly, the trial court properly declined to admit the statement.

In any event, we concur with the trial court's ruling that Terry could not use his fifth amendment privilege against self-incrimination as both a sword and a shield.

Several courts have been faced with the issue of whether a defendant who has procured his own unavailability by invoking his protection against self-incrimination is "unavailable" as a witness for purposes of Rule 804(b)(1) (former testimony). In *U.S. v. Kimball*, 15 F.3d 54 (1994), the Fifth Circuit Court of Appeals held a defendant who creates his own unavailability by invoking his fifth amendment privilege against self-incrimi-

---

7. Terry asserts the pathologist testified victim did not suffer any sexual "trauma," thereby corroborating his claim of consensual sex. On the contrary, the pathologist specifically testified the fact that there was no vaginal tearing or bruising did not indicate there was no assault, but that the semen found in the vaginal canal indicated· "quite the opposite."

nation is not "unavailable," stating, "[w]hile sensitive to the importance of not discouraging or prejudicing a defendant who invokes the fifth amendment, we cannot accept the view proposed by Kimball. A defendant seeking to testify and make exculpatory statements must face cross-examination. That is a basic rule of our adversary system." To hold otherwise would permit "the criminally-accused to set out all the facts which fall in his favor without laying himself open to cross-examination." *Castro v. State of Texas,* 914 S.W.2d 159, 163 (Tex.Ct.App.1995). *Accord Dennis v. State of Texas,* 961 S.W.2d 245 (Tex.Ct.App.1997) (testimony's sponsor may not make himself unavailable by invoking fifth amendment privilege and then benefit from that unavailability). While the above-cited cases involve the "former testimony" exception to the hearsay rule, we find the same policy considerations apply here. Accordingly, we hold the circuit court properly refused to allow Terry to introduce the statement.

■ Terry next asserts that, even if the trial court properly excluded his statement to police, he should have been permitted to elicit the fact that he had given a statement in order to demonstrate that he had cooperated with police. He contends the jury "was left with the erroneous impression [he] stood silent in the face of an accusation that he committed murder." We disagree.

Initially, defense counsel told the jury Terry **had** given a confession. Accordingly, his claim that the jury had the erroneous impression he had not cooperated with police is simply untenable.

In any event, the fact that Terry gave police a statement was simply irrelevant to any issue at trial. Admission of the fact that Terry cooperated with police, without giving the substance of the statement, would, in our opinion have been confusing and misleading to the jury. *Accord, People v. Harvey,* 208 Cal.Rptr. 910, 925, 163 Cal.App.3d 90, 115 (1985) (as with "absence of flight," evidence of a defendant's cooperation with authorities may not necessarily indicate innocence and is therefore properly excluded in light of possibility of confusing the jury). Accordingly, we find it was properly excluded. Moreover, given the fact that Agent Frier testified Terry was cooperative in all his dealing with police, and

defense counsel reiterated this fact to the jury in closing, we discern neither error nor prejudice in exclusion of this evidence.

## 2. CHARTER RIVER RECORDS

Prior to trial, the State moved for disclosure of medical records from Charter Rivers Hospital pertaining to treatment Terry received there from August 21st–30th, 1994,[8] approximately three months after the murder. The solicitor had information the admission was for anger control and substance abuse and contended the records were relevant to the penalty phase of a capital trial insofar as they reflected the character of the defendant. The defense argued the records were not discoverable under Rule 5, citing *State v. Parker*[9] and *McMakin v. Bruce Hospital*.[10] The trial court ordered disclosure. We find no error.

Although S.C.Code Ann. § 19–11–95(B)(1) prohibits a mental health provider from knowingly revealing confidences of patients, an exception is set forth in § 19–11–95(D)(1) which provides, in pertinent part:

(D) A provider **shall** reveal:

(1) confidences when required by statutory law or by court order for good cause shown to the extent that the patient's care and treatment or **the nature and extent of his mental illness or emotional condition are reasonably at issue in a proceeding**... (emphasis supplied).

Given that this is a capital case, the jury was required to assess Terry's character. *State v. Tucker*, 324 S.C. 155, 478 S.E.2d 260 (1996) (it is essential the jury in a capital case have all possible relevant information about the individual defendant whose fate it must determine; jury's attention must be focused on both the specific circumstances of the crime and the characteristics of the person who committed it). *See also Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978,

---

**8.** Terry went to Charter Rivers to avoid incarceration as a result of an arrest for assault.

**9.** 294 S.C. 465, 366 S.E.2d 10 (1988).

**10.** 318 S.C. 15, 455 S.E.2d 693 (1995).

2991, 49 L.Ed.2d 944, 961 (1976) (in capital cases, the Eighth Amendment requires consideration of the character and record of the individual offender as a constitutionally indispensable part of the process of inflicting the penalty of death); *State v. Green,* 301 S.C. 347, 392 S.E.2d 157 (1990), *cert. denied* 498 U.S. 881, 111 S.Ct. 229, 112 L.Ed.2d 183 (evidence of defendant's character properly admitted in penalty phase of a capital trial). Accordingly, we find Terry's mental and emotional status were "reasonably at issue" in the proceeding and the trial court properly ordered disclosure pursuant to § 19–11–95(D). *See generally* Wanda Ellen Wakefield, Annotation, *Physician–Patient Privilege as Extending to Patient's Medical or Hospital Records,* § 7, 10 A.L.R.4th 552 (1981) (majority of jurisdictions permit introduction of such records in criminal trials under similar statutory exceptions).

■ Terry also asserts the trial court failed to make a sufficient showing of factual necessity to warrant disclosure as required by S.C.Code Ann. § 44–22–100, and this Court's opinions in *McMakin* and *Parker.* We disagree.

Section 44–22–100 permits disclosure if a "court directs disclosure is necessary for the conduct of proceedings before it and that failure to make the disclosure is contrary to the public interest." The trial court here specifically found the records were necessary,[11] that good cause had been shown, that other means were unavailable to obtain the information, and that public need outweighed the need for privacy. Here, given that the state did not know precisely what information was contained in the Charter Rivers Records, it is patent it could not have discovered the information through other means.[12] Further, we find good cause was shown by the state insofar as the records were relevant to the defendant's character.

---

11. Terry's reliance on *State v. Parker, supra,* is misplaced. In that case, this Court specifically noted that no exceptions to S.C.Code Ann. § 44–23–1090 were applicable. Section 44–23–1090, like section 44–22–100, permits an exception if the trial court finds, as the trial court did here, that disclosure of the records is necessary for the conduct of proceedings before it.

12. For this reason, the trial court properly found the state had no other means of obtaining this information and Terry's reliance on *McMakin v. Bruce Hospital, supra,* is misplaced.

Finally, in his case in mitigation, Terry's expert, Jan Vogelsang, testified concerning his explosive outbursts, use of alcohol and drugs, and the fact that he could adapt to prison with appropriate intervention. Vogelsang specifically testified concerning the diagnoses from Charter Rivers. Moreover, Terry's three other experts relied on these records in testifying during his case in mitigation. Accordingly, given Terry's own reliance on these records as mitigating evidence, we discern no prejudice. The trial court properly ordered disclosure of the records to the state.

Terry's remaining issue is affirmed pursuant to Rule 220(b), SCACR, and the following authorities. *State v. Nance*, 320 S.C. 501, 466 S.E.2d 349, *cert. denied*, 518 U.S. 1026, 116 S.Ct. 2566, 135 L.Ed.2d 1083 (1996) (relevance, materiality and admissibility of photographs are matters within the sound discretion of the trial court); *State v. Kornahrens*, 290 S.C. 281, 350 S.E.2d 180 (1986).

## CONCLUSION

Terry's convictions and sentences are affirmed. After a review of the record, we find the death sentence was not the result of passion, prejudice, or any other arbitrary factor, and the jury's findings of statutory aggravating circumstances are supported by the evidence. *See* S.C.Code Ann. § 16–3–25 (1985). Further, the death penalty is neither excessive nor disproportionate to that imposed in similar cases. *State v. Council*, 335 S.C. 1, 515 S.E.2d 508 (1999); *State v. Tucker*, 334 S.C. 1, 512 S.E.2d 99 (1999).

**AFFIRMED.**

TOAL, MOORE and BURNETT, JJ., concur.

FINNEY, C.J., dissenting in a separate opinion.

FINNEY, Chief Justice:

I respectfully dissent. In my opinion, the refusal to admit appellant's statement constitutes reversible error under the facts of this case. I would reverse and remand for a new trial.

I agree with the majority that appellant's statement was not admissible under Rule 804(b)(3), SCRE. I base my conclusion

not on the fact that the statement is "exculpatory," [1] nor that it was not corroborated,[2] nor on the fact that the majority is again[3] willing to permit counsel's argument to substitute for evidence, but rather on the plain language of the rule itself: "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible . . . ." It is clear this rule contemplates that the accused and the declarant are different people.

I would, never-the-less, reverse this case in light of what I perceive as improper actions by the solicitor. Prior to the taking of testimony, appellant moved to suppress this confession. The State opposed the motion, and following a *Jackson v. Denno* [4] hearing, the trial judge ruled the statement would be admitted. In order to defuse the statement's impact, defense counsel acknowledged to the jury during his opening statement that appellant had given a confession in which he admitted having intercourse with the victim, and then killing her. The solicitor, however, never introduced the statement and appellant then sought to introduce it through the testimony of the police officer. This request was refused.

In my opinion, the solicitor's actions in this capital case

---

1. It clearly exposes appellant to criminal liability.

2. The majority misunderstands the corroboration requirement: it goes not to the contents of the statement or its truth, but to the trustworthiness of the statement itself. *See State v. Kinloch*, 338 S.C. 385, 526 S.E.2d 705 (2000). On the merits, I simply do not understand how the mere presence of semen in the victim's vagina is proof of nonconsensual sexual activity as the majority asserts in footnote 7.

3. *See, e.g., State v. Hughes*, 328 S.C. 146, 493 S.E.2d 821 (1997) (Finney, C.J., dissenting) (argument of counsel is not evidence). Further, as explained later, under the circumstances here to use counsel's admission in his opening statement to render the refusal to admit the statement harmless is disingenuous at best. Finally, I do not understand how the majority can conclude in one paragraph that counsel's reference to the confession renders "[appellant's] claim that the jury had the erroneous impression he had not cooperated with police . . . simply untenable", yet hold in the very next paragraph that to let the jury know the fact that appellant gave a confession "would have been confusing and misleading to the jury" and therefore evidence of its existence was properly excluded.

4. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

constitute "sandbagging".[5]  I would not condone this type of conduct, but would hold that under these circumstances, the refusal to admit the statement was reversible error.  Accordingly, I would reverse and remand for a new trial.

---

5.  It was the uncorroborated fear of the use of this type tactic by defense counsel that led a majority of this Court to abolish *in favorem vitae* review.  *State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991) (Toal, A.J., concurring).