605 S.E.2d 522

The STATE, Respondent,

v.

Reyes CABRERA–PENA, Petitioner.

No. 25893.

Supreme Court of South Carolina.

Heard Feb. 3, 2004.

Decided Nov. 8, 2004.

Assistant Appellate Defender Robert M. Dudek, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

Acting Justice MACAULAY.

The Court granted a writ of certiorari to review the Court of Appeals' opinion in *State v. Cabrera–Pena*, 350 S.C. 517, 567 S.E.2d 472 (Ct.App.2002). We affirm in result.

## FACTS

On June 30, 1999, Reyes Cabrera–Pena (Cabrera–Pena) went to an Applebee's restaurant in Spartanburg where his estranged wife Alma was dining with three of her friends and the couples' two-year-old daughter, Melissa. According to the only direct evidence, the testimony of Alma's friends, Cabrera–Pena and Alma went outside and argued briefly; Cabrera–Pena then left.

After he left the restaurant, Cabrera–Pena purchased a gun for $30.00. He then went back to the restaurant and sat in his van in the parking lot, waiting for Alma to come out. As Alma and her friends left the restaurant around midnight, they spotted Cabrera–Pena's van in the parking lot; Cabrera–Pena flashed his lights and Alma walked toward his van. After speaking to him for several minutes, Alma began walking towards her friends' pickup truck, followed by Cabrera–Pena. She motioned to her friends that he had a gun. Cabrera–Pena told the group that he was taking Melissa and Alma with him. Alma refused to go and Cabrera–Pena pulled the gun and pointed it at her as she held Melissa on her hip. Alma put her hand on his wrist and pushed the gun down. Cabrera–Pena lifted the gun and pointed it at her head. As Alma backed away, still holding her child, Cabrera–Pena shot her in the right eye. Both Alma and Melissa fell to the ground. Cabrera–Pena pointed the weapon at each of Alma's three friends, but then threw the gun over a fence, ran back to his

van and drove away. Cabrera–Pena was arrested a short time later.

After his arrest, Cabrera–Pena was taken to an interview where two detectives, Officer Morrow and Officer Taylor, initially questioned him. When it became apparent that Cabrera–Pena was not fluent in English, they called in Officer Tony Membreno, who was fluent in Spanish to assist them in questioning Cabrera–Pena. At trial, Officer Membreno testified that, after reading him his rights, Cabrera–Pena blurted out, "I'm guilty. I fully accept everything that had happened and I'm responsible for it." Membreno then began referring to his notes from the interview. According to Membreno, Cabrera–Pena told him that when he left Applebee's the first time, he dropped his friend Juan at home, purchased some beer and, on his way home, he found a person from whom he purchased a gun for $30.00. After that, Cabrera–Pena said he then went back to Applebee's, parked his van and waited for his wife. Two hours later, his wife came out and, after they talked, they walked back to her friends. He told Membreno that, before he got out of his van, he had put the gun in his pants between his belt and his shirt. Cabrera–Pena told him that when the shot was fired, he got scared and threw the gun away behind a fence and left in the van.

On cross-examination, Cabrera–Pena, who was proceeding *pro se*, handed Membreno a document and inquired whether Membreno had signed it and given it to him. The document contained Cabrera–Pena's written statement to the police, which included his statement: "I do not know how she took the gun out of my pants pocket. I tried to grab and force her, but the gun went off and fired."

The following colloquy occurred out of the presence of the jury:

> The Court: The State has objected to any statement that was made by you that tends to be in your favor. You may remain silent or you may tell the jury about this, but you may not ask this witness about this statement, this part of it.
>
> Cabrera–Pena: Why can't I?
>
> The Court: You either have to testify or remain silent. If you are permitted to ask him to read this part of the

statement, then you are testifying through another witness, which is not permitted. Do you understand?

Cabrera–Pena: It's the **same thing that I said** that I signed. It's the same thing.

The Court: You may testify or remain silent, but **you may not ask this witness what you said** to defend yourself. (Emphasis supplied).

The jury was charged with the law of murder and voluntary manslaughter, possession of a firearm during the commission of a violent crime, and three counts of pointing and presenting a firearm. During its deliberations, the jury inquired as to whether Cabrera–Pena's statement of his guilt to Membreno was admissible as evidence and inquired as to why it did not have Cabrera–Pena's statement. Thereafter, the jury requested to re-hear the testimony of Officer Membreno and requested to be recharged on the law of manslaughter. After lengthy deliberation and an *Allen*[1] charge, the jury returned verdicts of guilty on all counts. Cabrera–Pena was sentenced to life imprisonment for murder and concurrent terms of five years for each of three pointing a firearm offenses.

On appeal, Cabrera–Pena asserted the trial court erred in prohibiting him from questioning Officer Membreno about his statement made to the officer that his wife had somehow gotten the gun out of his pants pocket and it had gone off. He contended the "rule of completeness" and fundamental fairness demanded he be allowed to put his statement into context. The Court of Appeals disagreed. *State v. Cabrera–Pena,* 350 S.C. 517, 567 S.E.2d 472 (Ct.App.2002).

## ISSUE

Did the Court of Appeals err in ruling Cabrera–Pena was not entitled to cross-examine Officer Membreno concerning the self-serving portions of the statements he made to the officer?

---

**1.** *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

## DISCUSSION

### A. Self–Serving Statement

■ The trial court ruled Cabrera–Pena's self-serving statement made to Officer Membreno was not a proper subject for cross-examination. The Court of Appeals agreed, finding Cabrera–Pena's statements to Membreno were not admissible under either Rule 106, SCRE, or under this Court's opinions in *State v. Jackson*, 265 S.C. 278, 217 S.E.2d 794 (1975) or *State v. Terry*, 339 S.C. 352, 529 S.E.2d 274, *cert. denied*, 531 U.S. 882, 121 S.Ct. 197, 148 L.Ed.2d 137 (2000).

Initially, we note that, at oral argument before this Court, counsel for Cabrera–Pena indicated that this Court's opinion in *State v. Terry* is being read as requiring exclusion of the exculpatory portions of a defendant's statement under any and all circumstances. Such a reading misconstrues the holding in *Terry*.

*Terry* involves the issue of whether a statement against penal interest may be admitted by a non-testifying defendant pursuant to Rule 804(b)(3), SCRE. There, we held that Terry, who had elected not to testify, could not thereafter admit the self-serving statement he made to the police. The rationale for this holding, however, was that a defendant may not claim "unavailability" as a witness by virtue of exercising his fifth amendment privilege against self-incrimination. *Terry* stands only for the proposition that such an exculpatory statement may not be admitted by a non-testifying defendant pursuant to Rule 804(b)(3). However, this does not mean that the exculpatory statement of a non-testifying defendant is inadmissible under any and all circumstances. Indeed, we find the statement in the present case was admissible pursuant to *State v. Jackson*, 265 S.C. 278, 284, 217 S.E.2d 794, 797 (1975).

In *State v. Jackson*, it was held:

When part of a conversation is put into evidence, an adverse party is entitled to prove the remainder of the conversation, so long as it is relevant, particularly when it explains or gives new meaning to the part initially recited. "All statements made in a conversation, in relation to the same subject or matter, are to be supposed to have been intended to explain or qualify each other, and therefore **the plainest**

**principles of justice requires that if one of the statements is to be used against the party, all of the other statements tending to explain it or to qualify this use should be shown and considered in connection with it."** 265 S.C. at 284, 217 S.E.2d at 797 (emphasis supplied; internal citations omitted).

Here, Cabrera–Pena was interviewed during a one-hour period at 4:00 a.m. During this interview, he made oral statements to Officer Membreno and gave a written statement. At trial, the state elected, notwithstanding an abundance of eyewitness testimony, to call Officer Membreno to the stand and question him concerning the statements made to him by Cabrera–Pena. The trial court then prohibited Cabrera–Pena from cross-examining Membreno as to the remaining self-serving statements made to Membreno. This was error.

Officer Membreno testified as to his conversation with Cabrera–Pena, referring to his notes from the interview. Membreno testified that Cabrera–Pena blurted out that he was guilty and went on to give him the details of the evening. Thereafter, when Cabrera–Pena attempted to cross-examine Membreno concerning the contents of his report of their conversation, he was prohibited from doing so.[2] Under *Jackson*, once the state elected to utilize Officer Membreno's testimony to elicit incriminating statements made by Cabrera–Pena, justice required that his remaining statements tending to explain or qualify those statements should have been considered in connection therewith. Accordingly, we find Cabrera–Pena's cross-examination of Membreno was improperly limited.

We find the state's assertion of a distinction between the written and oral conversations in this case to be one without a difference. As noted previously, Officer Membreno testified on direct examination from his notes concerning the substance of his conversation with Cabrera–Pena. Cabrera–Pena then attempted to cross-examine Membreno regarding the contents of the report of that conversation. This is not a case in which the defendant gave numerous written and oral statements to

---

2. The omitted portion of Cabrera–Pena's statement was that "I do not know how she took the gun out of my pants pocket. I tried to grab and force her, but the gun went off and fired."

police over several hours, days or weeks. To the contrary, this was a one-hour conversation with police wherein Cabrera–Pena "gave a statement—a written statement and vocal statements." We find that fundamental fairness requires that Cabrera–Pena be permitted to cross-examine Officer Membreno concerning the entirety of their conversation. *Jackson, supra.* Accordingly, we hold the Court of Appeals erred in holding Cabrera–Pena was not entitled to cross-examine Membreno.

Further, we take this opportunity to clarify for the bench and bar the application of Rule 106, SCRE. Rule 106 provides:

> When a writing, or recorded statement, or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

The Court of Appeals held that Rule 106, by its terms, applies only to written or recorded statements. As we noted in *State v. Taylor,* 333 S.C. 159, 170, 508 S.E.2d 870, 876 (1998), Rule 106 is based on the rule of completeness and seeks to avoid the unfairness inherent in the misleading impression created by taking matters out of context. We stated:

> Rule 106 [of the Federal Rules of Evidence] is a procedural device governing the timing of completion evidence; the Rule is 'primarily designed to affect the order of proof'. It means that the adverse party need not wait until cross-examination or rebuttal. As such, the Rule reduces the risk that a writing or recording will be taken out of context and that an initial misleading impression will take hold in the mind of the jury.

*Id.* (citing S. Saltzburg, M. Martin & D. Capra, *Federal Rules of Evidence Manual,* 98–99 (1998)). The Historical Notes to Rule 106 recognize, however, that adoption of the "rule does not change the order of proof as to the remainder of an **unrecorded conversation;** the party seeking to bring out the remainder must do so during cross-examination or during that party's case." (Emphasis supplied). Accordingly, Rule 106 merely requires that an oral or unrecorded conversation be brought out upon cross-examination, rather than on direct examination; the rule does not, however, prohibit introduction

of oral statements or otherwise vitiate the rule of completeness as it applies to such statements.

We find the common law of this state extends the rule of completeness to oral communications. *Jackson, supra. Accord State v. Eugenio*, 219 Wis.2d 391, 579 N.W.2d 642 (1998) (notwithstanding provision identical to Rule 106 referring only to written or recorded statements, common law rule of completeness continues to exist for oral statements); *State v. Cruz–Meza*, 76 P.3d 1165 (Utah 2003) (recognizing rule of completeness may be applied to oral statements through Rule 611);[3] *State v. Johnson*, 479 A.2d 1284 (Maine 1984). *See also United States v. Haddad*, 10 F.3d 1252 (7th Cir.1993) (citing 1 Weinstein & Berger, *Weinstein's Evidence*, § 106–4 (1992)). Accordingly, where, as here, the state elects to use a witness to elicit portions of a conversation (and incriminating statements therein) made by a defendant, the rule of completeness requires the defendant be permitted to inquire into the full substance of that conversation.

## B. Harmless Error

Although we find Cabrera–Pena should have been permitted to cross-examine Membreno concerning the remainder of what Cabrera–Pena said in his conversation during the interview, we find this error harmless beyond a reasonable doubt given the overwhelming evidence of guilt in this case. *Arnold v. State*, 309 S.C. 157, 420 S.E.2d 834 (1992), *cert. denied*, 507 U.S. 927, 113 S.Ct. 1302, 122 L.Ed.2d 691 (1993) (error is harmless beyond a reasonable doubt where it did not contribute to the verdict obtained). We make this determination fully cognizant of the rule that if any evidence exists to warrant the jury charge of the lesser-included offense of involuntary manslaughter, then the charge must be given. *State v. Burriss*, 334 S.C. 256, 265, 513 S.E.2d 104, 109 (1999).

Under the facts in the instant case, Cabrera–Pena was not entitled to the charge on the lesser-included offense of

---

3. Rule 611(a) provides that the court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth. SCRE 611(a) is identical to the federal rule.

involuntary manslaughter as a matter of law. Involuntary manslaughter is defined as either:

> (1) the killing of another without malice and unintentionally, but while one is engaged in the commission of some unlawful act not amounting to a felony and not tending to cause death or great bodily harm; or (2) the killing of another without malice unintentionally, but while one is acting lawfully with reckless disregard of the safety of others.... Again, the pivotal issue is whether Appellant was engaged in a lawful activity at the time of the killing.

*Id.* 334 S.C. at 264–265, 513 S.E.2d at 109.

We find that Cabrera–Pena's conduct—leaving Alma at Applebee's and purchasing a handgun; loading the handgun; returning to the Applebee's parking lot to wait for Alma to exit the restaurant; calling her over to his van after she exited the restaurant; showing Alma the gun and then walking her back over to the truck where the friends were standing, prompting Alma to motion to them that he had a gun; and finally, shooting her in the eye, killing her—is not the type of conduct contemplated under either definition of involuntary manslaughter.

Cabrera–Pena's conduct does not fit within the first definition of involuntary manslaughter because he was engaged in unlawful, felonious and harmful conduct. At minimum, he used the loaded pistol to intimidate Alma and forcefully walk her over to the pickup truck where her friends were. This conduct may be considered felonious under S.C.Code Ann. § 16–23–410 (1976) (pointing or presenting a firearm) or S.C.Code Ann. § 16–3–910 (1976) (kidnapping).[4] Further, we note that Cabrera–Pena was convicted of three counts of the felony of pointing and presenting a firearm, S.C.Code Ann. § 16–23–410, as he pointed the pistol at Alma's three friends after he shot Alma and before he fled the scene.

---

4. *See also* S.C.Code Ann. § 16–25–65 (Supp.2003), "Criminal Domestic Violence of a High and Aggravated Nature" as amended by 2003 Act No. 92, § 3, eff. January 1, 2004 (a person who commits "an assault and battery which involves the use of a deadly weapon" or "an assault, with or without an accompanying battery, which would reasonably cause a person to fear imminent serious bodily injury or death" is guilty of a felony).

Cabrera–Pena's conduct also does not fit within the penumbra of the second definition of involuntary manslaughter. Cabrera–Pena was acting unlawfully when he took advantage of the unfair and extremely dangerous situation that he created by bringing a loaded, deadly weapon into a domestic dispute in a public place.

Moreover, this is not a type of involuntary manslaughter case where "a person can be acting lawfully, even if he is in unlawful possession of a weapon, if he was **entitled to arm himself in self defense at the time of the shooting.**" *State v. Crosby*, 355 S.C. 47, 52, 584 S.E.2d 110, 112 (2003) (emphasis supplied) (citing *Burriss*, 334 S.C. at 262, 513 S.E.2d at 108). Cabrera–Pena presented no evidence that he was acting in self-defense.

The dissent would hold, however, that mere "evidence of negligent handling of a loaded gun will support a charge of involuntary manslaughter." *Burriss*, 334 S.C. at 265, 513 S.E.2d at 109; *State v. White*, 253 S.C. 475, 479, 171 S.E.2d 712, 714 (1969).[5]

In *Burriss*, the question was, as here, whether the defendant was entitled to have the lesser-included offense of involuntary manslaughter submitted to the jury. According to Burriss, Kenneth and James were smoking crack laced marijuana cigarettes, "getting crazy or something," when they threatened to rob him. After being physically attacked and thrown to the ground, Burriss drew his gun and Kenneth ran into a house "like he was getting something." Burriss was afraid it was a gun. When James began moving threateningly toward Burriss, Burriss snatched his gun up and it fired, killing Kenneth. 334 S.C. at 263, 513 S.E.2d at 108. This Court found that "the evidence in the record supports Appellant's claim *he was acting lawfully when the gun fired.*" *Id.* at 265, 513 S.E.2d at 109 (emphasis supplied).

---

5. In her well-reasoned dissent in *State v. Reese*, 359 S.C. 260, 280, 597 S.E.2d 169, 179 (Ct.App.2004), Chief Judge Hearn of the Court of Appeals points out that while *White* cites this as a proposition of law, the issue in *White* did not hinge on this analysis but rather whether the trial judge erred in permitting a murder indictment to go to the jury when the only offense charged was involuntary manslaughter.

 The unlawful possession of a firearm does not preclude a charge of accident if the accused was engaged in a lawful activity at the time of the killing. *State v. Goodson,* 312 S.C. 278, 440 S.E.2d 370 (1994). However, the "unlawful possession of a firearm can under certain circumstances constitute an unlawful activity so as to preclude an accident defense if it is the proximate cause of the killing." *Burriss,* 334 S.C. at 262, 513 S.E.2d at 108 n. 5. The same reasoning applies in the context of involuntary manslaughter, and "a person can be acting lawfully, even if he is in unlawful possession of a weapon, if he was entitled to arm himself in self-defense at the time of the shooting." *Id.* at 265, 513 S.E.2d at 109.[6]

The dissent duly notes that this Court does not sit as a finder of fact to determine the believability of Cabrera–Pena's statement. But this Court must determine as a matter of law whether that statement would have entitled Cabrera–Pena to a charge of involuntary manslaughter in this case. *State v. Tyler,* 348 S.C. 526, 560 S.E.2d 888 (2002). It is patent that Cabrera–Pena's conduct in arming himself with a deadly weapon, to lay in wait for his wife, so that he could confront her, was not a lawful activity and, indeed, created a highly volatile and incendiary domestic situation that resulted in

---

**6.** As noted in *Burriss,* "[t]here is a difference being lawfully *armed* in self-defense and *acting* in self-defense." 334 S.C. at 265, 513 S.E.2d at 109 n. 10 (emphasis supplied). In this case, there is no evidence Cabrera–Pena "was engaged in a lawful activity at the time of the killing" so as to have entitled him to be armed. *Id.* Nevertheless, the dissent would find "there is no evidence Cabrera–Pena was unlawfully carrying a weapon" because there is an exception for those persons with a permit from SLED from the express provision that "[i]t is unlawful to carry about the person any pistol, whether concealed or not." S.C.Code Ann. § 16–23–20(12) (2003). This is notwithstanding that the "statute clearly states that it is unlawful to carry a pistol, and the exceptions are not descriptive of the offense. This Court holds the view that the state is not required to negate each exception to the offense of unlawfully carrying a pistol to sustain its burden of proof." *State v. Clarke,* 302 S.C. 423, 425, 396 S.E.2d 827, 828 (1990). Without addressing whether or not SLED was granting permits that night, we find that Cabrera–Pena was not simply carrying a weapon; he was carrying the weapon for the purpose of laying in wait in order to confront his wife. The subsequent confrontation that ensued illustrated that Cabrera–Pena had every intention of using the gun.

Alma's death. *Id.* Therefore, Cabrera–Pena was not entitled to an involuntary manslaughter charge.

## CONCLUSION

We REVERSE the ruling of the Court of Appeals that an adverse party is not permitted to bring out, during cross-examination, remaining portions of an unrecorded conversation or oral statement made by the adverse party for the purpose of clarifying or explaining an entire conversation. *Jackson, supra.* If the statement is in writing or recorded, the adverse party may require the introduction of the relevant portions—at the time of introduction of other portions of the statement—pursuant to Rule 106, SCRE. We hold that Cabrera–Pena should, in fairness, have been allowed to cross-examine Officer Membreno to fully place into context the substance of their conversation. Accordingly, to the extent the Court of Appeals held otherwise, its opinion is reversed.

We, nonetheless, affirm in result because we find there was overwhelming direct evidence of Cabrera–Pena's guilt of the offense of murder such that any error in the limitation of Cabrera–Pena's cross-examination was harmless beyond a reasonable doubt.

REVERSED IN PART; AFFIRMED IN RESULT.

TOAL, C.J., and BURNETT, J., concur. MOORE, J., dissenting in a separate opinion in which PLEICONES, J., concurs.

Justice MOORE dissenting:

I respectfully dissent. I agree the trial court erred in refusing to admit appellant's statement in its entirety, but I would not find this error harmless.

The majority relies on evidence from the State's witnesses to conclude appellant was not entitled to a charge of involuntary manslaughter. Under *appellant's* version of the facts, however, he was entitled to such a charge. The excluded part of appellant's statement was: "I do not know how she took the gun out of my pants pocket. I tried to grab and force her, but

the gun went off and fired." [7] Because this critical part of appellant's statement would have entitled him to a charge of involuntary manslaughter, the error in its exclusion cannot be harmless. *See State v. Burriss,* 334 S.C. 256, 265, 513 S.E.2d 104, 109 (1999) (evidence of negligent handling of a loaded gun will support a charge of involuntary manslaughter); *State v. White,* 253 S.C. 475, 479, 171 S.E.2d 712, 714 (1969) (same).

As stated by the majority, involuntary manslaughter is defined as either:

> (1) the killing of another without malice and unintentionally, but while one is engaged in the commission of some unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm; or (2) the killing of another without malice and unintentionally, but while one is acting lawfully with reckless disregard of the safety of others.

*Burriss,* 334 S.C. at 264–65, 513 S.E.2d at 109. Here, there is no evidence appellant unlawfully possessed the weapon.[8] Even if appellant was acting unlawfully in carrying a concealed weapon, this conduct is not a felony [9] such that it would preclude a charge of involuntary manslaughter, nor is it an activity in itself "tending to cause death or great bodily harm." To preclude a charge of involuntary manslaughter, the unlawful possession of a weapon must be the proximate cause of the killing. *Id.* at 262, 513 S.E.2d at 108, n. 5. Under appellant's version of the facts, his possession of the gun was not the proximate cause of the victim's death since the gun was removed from his pocket only when the victim herself grabbed it.

---

**7.** Eyewitnesses testified the victim put her hand on appellant's wrist but she backed away before the gun was fired. Appellant referred to this testimony in closing argument and maintained the shooting was an accident.

**8.** The majority cites S.C.Code Ann. § 16–23–20 (2003) for the proposition that it is unlawful to carry a weapon on one's person. This section provides in full that it is unlawful to carry a weapon *without a permit.* § 16–23–20(12). The State did not come forward with any evidence that appellant was in unlawful possession of the gun and there is no evidence regarding whether or not appellant had a permit.

**9.** A violation of § 16–23–20 (carrying a concealed weapon) is a misdemeanor. S.C.Code Ann. § 16–1–100(C) (Supp.2003).

This Court does not sit as a finder of fact. It was for the jury to determine whether appellant's version of the shooting was believable or not. Had appellant's statement been admitted in full, it would have entitled him to a charge of involuntary manslaughter. Accordingly, I would reverse.

PLEICONES, J., concurs.