22878

The STATE, Respondent v. Demetrius GATHERS, Appellant.
(369 S. E. (2d) 140)

Supreme Court

*Asst. Appellate Defender Joseph L. Savitz,* of the *South Carolina Office of Appellate Defense,* Columbia, and *Public Defender Joseph F. Kent,* Charleston, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka,* Columbia, and *Sol. Charles M. Condon,* Charleston, *for respondent.*

Heard March 8, 1988.

Decided June 6, 1988.

GREGORY, Chief Justice:

Appellant was convicted of murder and first degree criminal sexual conduct and sentenced to death. We affirm his convictions, reverse the death sentence, and remand for a new sentencing proceeding.

The victim, Richard Haynes, was a thirty-two-year-old black male. He was a self-proclaimed preacher and called himself "Reverend Minister." Haynes was attacked and killed by four black youths. He was stabbed in the stomach, beaten on the head with a bottle, and his rectum perforated by an umbrella inserted in his anus.

One of the four youths, Steven Hardrick, agreed to testify for the state in exchange for a guilty plea to misprison of a felony. Hardrick testifed that he and three others, including appellant, came across the victim late one night at a park bench on a bicycle path. The victim was changing his clothes. Appellant and the victim exchanged some words and appellant then struck the victim in the face. Another youth, Zandell Hayes, also struck the victim. Appellant pinned the victim to the ground while a third youth, Dee Brown, kicked and beat him. They then smashed a bottle on the victim's head.

When the victim stopped moving, Hardrick nudged him with his foot. Hardrick, Brown, and Hayes then left the scene while appellant remained with the victim. The others looked back and saw appellant beating the victim with an umbrella. Hardrick saw appellant push the umbrella into

the victim's anus. Appellant then rejoined the others. Appellant and Hayes, however, returned to the victim once more. Appellant said he stabbed the victim with a knife.

During the altercation, the youths rummaged through the victim's belongings and found two Bibles and various religious articles. These articles were admitted into evidence at the guilt phase of trial.

Appellant confessed to his involvement in the murder but claimed Brown was the main aggressor.

### GUILT PHASE

Appellant complains the solicitor injected an arbitrary factor into the jury's deliberation of guilt by attacking appellant's character when appellant had not put his character in issue. The solicitor stated:

> Let me first stop to point this out. Someone like Demetrius Gathers is not going to be talking about what he did to the minister over here at the Episcopal Church on the corner or the pastor at Morris Brown A.M.E. Church. Who is he going to be talking to: His own ilk. Who is that? Well, you have people out there like Rose Campbell; Jerome Heyward; James, known as Jeff, Carter. You had a chance to evaluate them. They weren't your sterling citizens that come forward after they heard about all this, but they did testify, and you did have a chance to hear what they had to say.
>
> What do all of them say, to a person? And why would they make this up? They all agree—again Steven Hardrick has been corroborated—that this defendant, this defendant along with Zandel Hayes, went back on that track after they left, just as Steven Hardrick told you. It's been corroborated and corroborated again. So it's just not Steven Hardrick's word.

The persons named by the solicitor are those who testified regarding what appellant said he had done to the victim. Appellant argues the solicitor's statements imply appellant is a person of bad character by association. We disagree.

Taken in context, these remarks were not an improper comment on appellant's character. The solicitor's argument concerning the credibility of the State's witnesses is within the record and its reasonable inferences. *State v. Cock-*

*erham,* 294 S. C. 380, 365 S. E. (2d) 22 (1988); *State v. Durden,* 264 S. C. 86, 212 S. E. (2d) 587 (1975). We find no error.

Appellant next contends the solicitor improperly disparaged the exercise of his constitutional rights and contrasted those rights with "the trial and execution" of the victim.

The solicitor's comments regarding appellant's rights to a lawyer and to remain silent are in reference to the voluntariness of appellant's confession, a factual issue submitted to the jury and therefore properly argued.

The solicitor also referred to appellant's right to confront witnesses and stated: "Contrast that in your mind's eye with the trial and the execution of Richard Haynes." This single comment does not rise to the level of prejudice found in *State v. Cockerham, supra,* where the solicitor's extensive comments constituted reversible error. In the context of the entire record, we hold any error harmless beyond a reasonable doubt. *State v. Cockerham, supra; see also State v. Bell,* 293 S. C. 391, 360 S. E. (2d) 706 (1987).

Next, appellant claims the trial judge should have *sua sponte* charged the jury on a defense of alibi based on his first pre-arrest statement to police that he was not at the scene at the time of the murder. We disagree.

Appellant first stated he was at Rose Campbell's home at Starcastle Apartments from 9:30 p.m. until 1:00 or 1:30 a.m. the night of the murder. The record indicates the murder occurred between 10:00 to 11:00 p.m. on the bicycle path behind Starcastle Apartments. This pre-arrest statement was introduced into evidence by the State to show appellant changed his story when he later confessed to some involvement in the murder.

Appellant did not raise a defense of alibi at trial. In fact, his lawyer stated at the commencement of trial: "For the record ... there will be no evidence of alibi." During closing argument, defense counsel further stated: "There is no question that he [appellant] was involved in beating him up."

In light of appellant's disavowal of an alibi defense, it was clearly proper that the trial judge did not charge alibi. Moreover, in view of the overwhelming evidence of appellant's guilt, we hold any error harmless beyond a reason-

able doubt. *State v. Gaskins*, 284 S. C. 105, 326 S. E. (2d) 132 (1985).

Next, appellant complains the trial judge improperly charged the jury on implied malice.

The trial judge charged the jury that malice may be implied from the intentional doing of an unlawful act where no excuse or legal provocation appears. This charge was proper. *State v. Crocker*, 272 S. C. 344, 251 S. E. (2d) 764 (1979). Appellant contends, however, the trial judge's charge requiring the jury to determine guilt or innocence "based upon the evidence" impermissibly shifted the burden to appellant to prove an excuse.

This argument is without merit. Nowhere in the charge does the judge mention the need for rebuttal or explanation of the evidence presented by the State. Moreover, the judge's charge comports with the requirement that it is for the jury to determine from all the evidence whether or not malice is proven. *State v. Patrick*, 289 S. C. 301, 345 S. E. (2d) 481 (1986).

Appellant next contends his conviction for first degree criminal sexual conduct should be reversed because of an alleged violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. (2d) 215 (1963). We disagree.

Pursuant to appellant's request for disclosure of evidence, the State provided an autopsy report prepared by Dr. Conradi. The report stated that the rectal wound was a contributory injury. At her meeting with defense counsel before trial, Dr. Conradi explained the sexual battery occurred "perimortem" or as death was occurring.

Appellant complains the State did not disclose evidence that Dr. Conradi equivocated as to whether the rectal wound was pre- or post-mortem at an early interview with a co-defendant's counsel. He contends this information would have allowed effective impeachment of Dr. Conradi at trial.

In determining the materiality of nondisclosed evidence, this Court will consider it in the context of the entire record. *State v. Osborn*, 291 S. C. 265, 353 S. E. (2d) 276 (1987). The State's failure to disclose information warrants a reversal as a *Brady* violation only if the omission deprived the defendant of a fair trial. *Id.; State v. Thompson*, 276 S. C. 616, 281 S. E. (2d) 216 (1981); *see also U. S. v. Bagley*,

473 U. S. 667, 105 S. Ct. 3375, 87 L. Ed. (2d) 481 (1985). Appellant effectively cross-examined Dr. Conradi at trial and she conceded she had previoulsy expressed an opinion she was unsure whether the rectal wound was before or after death. She further explained it was now her firm opinion the wound was pre-mortem. Because appellant has failed to show any prejudice from the alleged nondisclosure, we hold there was no error.

Accordingly, we affirm appellant's convictions for murder and first degree criminal sexual conduct.

### SENTENCING PHASE

Appellant contends the solicitor's closing argument at ■ the sentencing phase of trial violated *Booth v. Maryland*, 482 U. S. _____ , 107 S. Ct. 2529, 96 L. Ed. (2d) 440 (1987), by focusing extensively on the personal characteristics of the of the victim. We agree.

The solicitor's argument included these remarks:

> We know from the proof that Reverend Minister Haynes was a religious person. He had his religious items out there.... Among the many cards that Reverend Haynes had among his belongings was this card. It's in evidence. Think about it when you go back there. He had his religious items, his beads. He had a plastic angel. Of course, he is now with the angels now, but this defendant Demetrius Gathers cared little about the fact that he is a religious person.... But look at Reverend Minister Haynes' prayer. It's called "The Game Guy's Prayer." "Dear God, help me to be a sport in this little game of life. I don't ask for any easy place in this lineup. Play me anywhere you need me. I only ask you for the stuff to give you 100% of what I have got. If all the hard drives seem to come my way, I thank you for the compliment. Help me to remember that you won't ever let anything come my way that you and I together can't handle. And help me to take the bad break as part of the game. Help me to understand that the game is full of knots and knocks and trouble, and make me thankful for them. Help me to be brave so that the harder they come the better I like it. And, oh God, help me always to play on the square. No matter what the other players do, help me to come clean. Help me to study the book so

that I'll know the rules, to study and to think a lot about the greatest player that ever lived and other players that are portrayed in the book. If they ever found out the best part of the game was helping other guys who are out of luck, help me to find it out, too. Help me to be regular, and also an inspiration with the other players. Finally, oh God, if fate seems to uppercut me with both hands, and I am laid on the shelf in sickness or old age or something, help me to take that as part of the game, too. Help me not to whimper or squeal that the game was a frame-up or that I had a raw deal. When in the falling dusk I get the final bell, I ask for no lying, complimentary tombstones. I'd only like to know that you feel that I have been a good guy, a good game guy, a saint in the game of life." Reverend Minister Haynes, we know, was a very small person. He had his mental problems. Unable to keep a regular job. And he wasn't blessed with fame or fortune. And he took things as they came along. He was prepared to deal with tragedies that he came across in his life.

\* \* \*

Among the personal effects that this defendant could care little about when he went through it is something that we all treasure. It speaks a lot about Reverend Minister Haynes. Very simple yet very profound. Voting. A voter's registration card. Reverend Haynes believed in this community. He took part. And he believed that in Charleston County, in the United States of America that in this country you could go to a public park and sit on a public bench and not be attacked by the likes of Demetrius Gathers.

In *Booth*, the United States Supreme Court held the victim's personal characteristics are not proper sentencing considerations in a capital case. 107 S. Ct. at 2535. The Court reasoned there is no justification for permitting a capital sentencing decision "to turn on the perception that the victim was a sterling member of the community rather than someone of questionable character." 107 S. Ct. at 2534. Moreover, it would be impossible to provide the defendant "a fair opportunity to rebut such evidence without shifting the focus of the sentencing hearing away from the defendant."

107 S. Ct. at 2535. The Court concluded the injection of the victim's personal characteristics into the sentencing determination violated the Eighth Amendment.

The solicitor's extensive comments to the jury regarding the victim's character were unnecessary to an understanding of the circumstances of the crime. *Cf. State v. Bell*, 293 S. C. 391, 360 S. E. (2d) 706 (1987). These remarks conveyed the suggestion appellant deserved a death sentence because the victim was a religious man and a registered voter. Because the solicitor's remarks violated appellant's eighth amendment rights, we reverse the death sentence. *Accord State v. Gaskins, supra* (evidence of victim's bad character not admissible as mitigating evidence in sentencing phase).

We need not address appellant's remaining exceptions. Appellant's convictions are affirmed, the death sentence reversed, and the case is remanded for a new sentencing proceeding.

Affirmed in part; reversed in part; and remanded.

HARWELL, CHANDLER and FINNEY, JJ., and J. B. NESS, Acting Associate Justice, concur.