548 S.E.2d 896

The STATE, Appellant,

v.

**Richmond TRUESDALE, Jr., Respondent.**

No. 3357.

Court of Appeals of South Carolina.

Submitted Feb. 5, 2001.

Decided June 18, 2001.

---

**21.** "Soft" solutions or technologies, as defined by DHEC, consist of beach nourishment and sand scraping.

Deputy County Attorney Thomas E. Lynn, of North Charleston, for appellant.

Richmond Truesdale, Jr., of Adams Run, pro se.

CONNOR, Judge:

■ Richmond Truesdale, Jr., was convicted in magistrate's court of uttering a fraudulent check in violation of S.C.Code Ann. § 34–11–60 (1987 & Supp.2000). He appealed and the circuit court ordered the matter remanded for trial, finding there was no evidence Truesdale entered a valid guilty plea. The State appeals.[1] We affirm.

## FACTS

On October 18, 1995, Truesdale was arrested for allegedly writing a fraudulent check in the amount of $168.00 to the South Carolina Department of Revenue and Taxation. Truesdale was scheduled to appear for trial before magistrate Bonnie Koontz–Stickels (now Koontz) on November 9, 1995.

On that day, Truesdale reported to Judge Koontz's court. It is undisputed that court was delayed that day, although there is some dispute about the reason. During the delay, the arresting officer and Judge Koontz's staff advised those present that anyone who wanted to plead guilty and make restitution could do so immediately, rather than waiting for the magistrate. Truesdale agreed to pay restitution of $168.00 for

---

1. Initially, the magistrate was listed as a party in the caption for this appeal. Because we questioned whether the magistrate had standing, we requested the deputy county attorney and Truesdale to file supplemental briefs addressing this issue. These briefs confirmed that the appeal is properly on behalf of the State. *See, e.g., State v. Barbee,* 280 S.C. 328, 313 S.E.2d 297 (1984) (appeal by the State from circuit court's decision reversing and remanding respondent's magistrate court conviction); *State v. Eaves,* 260 S.C. 523, 197 S.E.2d 282 (1973) (same); *State v. Adams,* 244 S.C. 323, 137 S.E.2d 100 (1964) (same). Thus, we have amended the caption to reflect the proper parties and the caption as originally presented in the magistrate's court. *See* Rule 238(a), SCACR.

the check and a $25.00 returned check fee, plus court costs of $94.00. Truesdale paid $25.00 of his court costs and signed a Standard Time Payment form agreeing to pay the remaining balance of $71.82 by November 30, 1995.[2] Judge Koontz was not present during this time.[3]

On November 20, 1995, Truesdale timely filed a handwritten appeal with Judge Koontz asserting he was denied the right to a jury trial. According to Judge Koontz, Truesdale spoke to her sometime after he filed his appeal, indicating that he needed more time to pay the remaining court costs. Therefore, she reminded him that he had until the end of the month to pay the balance. Truesdale subsequently paid the remaining court costs on the November 30, 1995 due date. Judge Koontz stated she assumed the appeal was moot at that point and closed the file.

In contrast, Truesdale maintains he contacted the magistrate's office several times to inquire about the status of his appeal, and Judge Koontz advised him the papers regarding the disposition of his case were at the police department. Truesdale thereafter went to the circuit court and determined a return and other papers pertinent to the appeal had not been forwarded to the circuit court from the magistrate's office. In October 1996, Truesdale went to the Charleston County Police Department to check his criminal record. He had a conviction for a fraudulent check.

In March of 1998, Truesdale filed a petition for a writ of mandamus against Judge Koontz. The petition was dismissed by the circuit court for failure to properly serve the magistrate. Truesdale filed another petition and properly served Judge Koontz. On September 20, 1999, the circuit court construed Truesdale's petition as a motion to restore the appeal and directed the magistrate to file a return. Judge Koontz filed a return on September 30, 1999.

On October 6, 1999, the appeal was heard before the circuit court. Truesdale maintained that he was coerced into pleading guilty, after consistently asserting his right to a jury trial.

---

2. The Standard Time Payment added a 3% collection fee to the $94 court costs, or $2.82, leaving $71.82 due after Truesdale's payment.

3. Truesdale has paid the restitution due to the Department of Revenue.

According to Truesdale, Officer Casale told him that if he did not pay restitution, the return fee, and court costs, he would go to jail. Truesdale states he never pled guilty before a judge and always made it clear that he desired a jury trial. The circuit court remanded the matter for trial, stating "[t]here was no evidence that a plea was entered before a judge." This appeal followed.[4]

## DISCUSSION

The State contends the circuit court erred in reversing Truesdale's conviction for check fraud on the basis there was no evidence Truesdale entered a guilty plea to the charge.

"A defendant's knowing and voluntary waiver of a statutory or constitutional right must be established by a complete record; and may be accomplished by colloquy between the court and the defendant, between the court and defendant's counsel, or both." *State v. Ray*, 310 S.C. 431, 437, 427 S.E.2d 171, 174 (1993). "Of course, a guilty plea may not be accepted unless it is voluntarily entered with an understanding of the nature and consequences of the charge and the plea." *State v. Lambert*, 266 S.C. 574, 578, 225 S.E.2d 340, 341–42 (1976).

"[B]efore a court can accept a guilty plea, a defendant must be advised of the constitutional rights he is waiving. Specifically, a defendant must be aware of the privilege

---

4. The circuit court did not address the timeliness of Truesdale's petition for a writ of mandamus and the issue is not argued here. Accordingly, we need not consider it. Although Truesdale should have proceeded with a mandamus much sooner than he did, there is not a per se time limit for filing a petition for a writ of mandamus. *See State v. Barbee*, 280 S.C. 328, 313 S.E.2d 297 (1984) (defendant allowed to petition for a writ of mandamus to compel magistrate to file with the circuit court a record of the trial proceedings even after the appeal reached the Supreme Court); *State v. Eaves*, 260 S.C. 523, 197 S.E.2d 282 (1973) (same); *cf. State v. Adams*, 244 S.C. 323, 326, 137 S.E.2d 100, 101 (1964) (It is the duty of the defendant as the moving party to prosecute an appeal with due diligence and have it promptly disposed of, and should the magistrate fail to perform the ministerial duty of filing a return, it is incumbent on the defendant to obtain the magistrate's compliance by a petition for a writ of mandamus, if necessary). We note, however, there is no dispute as to the timeliness of Truesdale's notice of appeal to the magistrate.

against self-incrimination, the right to a jury trial, and the right to confront one's accusers." *Roddy v. State,* 339 S.C. 29, 33, 528 S.E.2d 418, 421 (2000) (citation omitted). "[T]he trial judge usually questions the defendant about the facts surrounding the crime and punishment that could be imposed." *Id.* at 34, 528 S.E.2d at 421. However, the trial judge need not "direct the defendant's attention to each and every constitutional right and obtain a separate waiver of each." *Lambert,* 266 S.C. at 578–79, 225 S.E.2d at 342.

In the current appeal, the arrest warrant indicates Truesdale was found guilty before Judge Koontz on November 9, 1995. However, both "bench trial" and "plea" are circled on the line designated for the type of disposition. On the line indicating the sentence imposed, the notation "94 STP" appears, which presumably stands for the $94.00 court costs and the Standard Time Payment form completed.

It is undisputed that Truesdale never appeared before Judge Koontz or any other magistrate to enter a formal guilty plea after having been advised of his constitutional rights. However, the State contends that Truesdale indicated to the clerk and the deputy that he wished to plead guilty and he posted the required bond, which included restitution in the amount of $193.00 ($168.00 plus a $25.00 returned check fee), and a portion of the court costs. The State asserts: "As clear evidence of this, the Defendant signed a Standard Time Payment and timely paid the remainder plus the required 3% fee." The State argues "[t]he requirement that the plea is voluntary and freely given can be verified by the Magistrate by the Respondent's payment of the restitution and court costs." The State maintains Truesdale's case is no different from the procedure for forfeiting bond and entering a conviction when a defendant is issued a Uniform Traffic Ticket and pays the bond before trial, and that the same procedure is appropriate here.

We agree with the circuit court that the Standard Time Payment form is insufficient evidence that Truesdale intended to enter a guilty plea to the fraudulent check charge. This situation is distinguishable from the procedures followed in disposing of charges under a Uniform Traffic Ticket. First, the Uniform Traffic Ticket statute enumerates certain of-

fenses that can be charged under the ticket, such as littering, ticket scalping, parking on private property without permission, trespassing, *etc.* S.C.Code Ann. § 56–7–10 (Supp.2000). Secondly, in the case of traffic offenses, South Carolina has a specific statutory provision that the payment of bond and the forfeiture of that bond prior to trial for traffic offenses shall have the same effect as a guilty plea and conviction. *See* S.C.Code Ann. § 56–5–6220 (1991); *see also Scott v. State,* 334 S.C. 248, 513 S.E.2d 100 (1999) (discussing statutes where Legislature has defined bond forfeiture as the equivalent of conviction). However, the offense of uttering a fraudulent check cannot be charged with a Uniform Traffic Ticket. Moreover, Truesdale was properly charged with issuing a fraudulent check by a warrant.

At the hearing before the circuit court, the deputy county attorney could not identify any comparable provision allowing the entry of a guilty plea and a conviction without the judge in this instance, and no citation to authority has been provided on appeal. We note, however, that under section 34–11–70(c) of the South Carolina Code, a magistrate may properly dispose of a fraudulent check charge prior to trial upon the defendant's payment of restitution and court costs, but the statute specifically provides that the resulting disposition is a dismissal, not a conviction:

> Any court, including magistrates, may dismiss any prosecution initiated pursuant to the provisions of this chapter on satisfactory proof of restitution and payment by the defendant of all administrative costs accruing not to exceed forty-one dollars submitted before the date set for trial after the issuance of a warrant.

S.C.Code Ann. § 34–11–70(c) (Supp.2000) (At the time of Truesdale's offense, the amount of administrative costs did not exceed twenty-five dollars. An amendment to the statute has since increased this amount.); *cf.* S.C.Code Ann. § 34–11–90(a) (Supp.2000) (*conviction* for a first offense is punishable by a fine of not less than $50 nor more than $200 or by imprisonment for not more than 30 days).

Accordingly, since we find there is no record of a guilty plea in this case, and the check charge was not dismissed, we

affirm the order of the circuit court remanding the matter for trial.

We have considered the State's argument that our decision will essentially eliminate the quick disposition of magistrate cases. The State appears to interpret a decision affirming the circuit court to require all defendants to appear before the magistrate in every case. Although this decision will impact the procedure for certain cases, it will not have the far-reaching implications that concern the State. Specifically, it should only affect those cases which do not fall within the statutorily prescribed procedure permitting bond forfeitures or payment of restitution and fines prior to appearing before the magistrate.[5]

Based on the foregoing, the decision of the circuit court is

**AFFIRMED.**[6]

HUFF and HOWARD, JJ., concur.

---

5. Moreover, contrary to the State's assertion, we do not foresee any impact on trials in absentia, given this mode of case resolution is decidedly different from the procedure employed in this case. In order for a criminal defendant to be tried in absentia, certain requirements must first be met. Rule 16, SCRCrimP. A trial judge must determine a defendant voluntarily waived his right to be present at trial in order to try the case in absentia. *Id.; State v. Ritch*, 292 S.C. 75, 354 S.E.2d 909 (1987); *State v. Jackson*, 288 S.C. 94, 341 S.E.2d 375 (1986); *State v. Castineira*, 341 S.C. 619, 535 S.E.2d 449 (Ct.App.2000). The judge must make findings of fact on the record that the defendant (1) received notice of his right to be present; and (2) was warned that the trial would proceed in his absence should he fail to attend. *Jackson*, 288 S.C. at 96, 341 S.E.2d at 375; *Castineira*, 341 S.C. at 623, 535 S.E.2d at 451.

Our decision in no way limits this procedure. Although the instant case presents a different procedural posture in that a trial was not conducted, Truesdale did appear in magistrate's court. If Truesdale had not appeared and the magistrate was present to make the requisite findings, Truesdale could have properly been tried in his absence.

6. Because we find Truesdale should have been given the opportunity to either plead guilty before the magistrate or proceed to trial, we find it unnecessary to address the State's second issue concerning the factual basis of the circuit court's ruling.