625 S.E.2d 239

**The STATE, Respondent,**

v.

**Frank Robert PATTERSON, Appellant.**

**No. 4069.**

Court of Appeals of South Carolina.

Heard Dec. 6, 2005.
Decided Jan. 9, 2006.
Rehearing Denied March 28, 2006.

---

220

222

Assistant Appellate Defender Robert M. Dudek, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter III; and Solicitor Warren Blair Giese, of Columbia, for Respondent.

ANDERSON, J.:

Frank Robert Patterson appeals his conviction for murder. He argues the trial court erred (1) in admitting a witness's statement to police; (2) by requiring Patterson's presence during the videotaping of a witness's testimony; and (3) by refusing to charge the jury on proximate cause. We affirm.

## *FACTUAL/PROCEDURAL BACKGROUND*

Patterson was accused of murdering his girlfriend, Sharon Clark, by beating her to death. Clark and her friend, Mary Richardson, walked to Patterson's home where the three of them drank for several hours. Later that night, Clark and Richardson decided to leave despite Patterson's insistence Clark should stay. As Richardson and Clark walked away, Patterson began striking Clark repeatedly with a blunt instrument.

Richardson screamed at Patterson to stop hitting Clark. She ran to a neighbor's house for assistance. When Richardson returned to the scene, she saw Clark lying on the ground motionless. Richardson ran down the street and flagged down a police car in the neighborhood. Richardson led the officer to Clark's location. Patterson, with his clothes bloody, returned to the scene while the officer was there. He admitted he had beaten Clark and was arrested.

Clark was taken to Richland Memorial Hospital where she was placed on a respirator and immediately rushed into the first of her two surgeries. Clark's skull was cracked in multiple places, and she had skull fragments in her brain. She lost a significant amount of blood due to the severity of her head injury. Clark's prognosis was poor; she was taken

off life support nine days later. Her feeding tube was removed on March 25, and she died on March 27.

The grand jury indicted Patterson for murder. Due to medical reasons, Richardson's testimony was videotaped. At the hearing, Patterson requested that he be allowed to waive his presence. The trial court refused his request. At trial, the jury found Patterson guilty of murder, and the trial court sentenced Patterson to life without parole.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only and is bound by the factual findings of the trial court unless clearly erroneous. *State v. Wilson,* 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001); *State v. Preslar,* 364 S.C. 466, 613 S.E.2d 381 (Ct.App.2005); *State v. Wood,* 362 S.C. 520, 525, 608 S.E.2d 435, 438 (Ct.App.2004). "The appellate court does not re-evaluate the facts based on its own view of the preponderance of the evidence, but simply determines whether the trial judge's ruling is supported by any evidence." *State v. Staten,* 364 S.C. 7, 15, 610 S.E.2d 823, 827 (Ct.App. 2005) (citing *State v. Mattison,* 352 S.C. 577, 575 S.E.2d 852 (Ct.App.2003)); *see also State v. Landis,* 362 S.C. 97, 101, 606 S.E.2d 503, 505 (Ct.App.2004) ("In criminal cases, the court of appeals sits to review errors of law only and is bound by the factual findings of the trial court unless clearly erroneous."). This Court should examine the record to determine whether any evidence supports the trial court's ruling. *See Wilson,* 345 S.C. at 6, 545 S.E.2d at 829.

On review, we are limited to determining whether the trial judge abused his discretion. *State v. Reed,* 332 S.C. 35, 503 S.E.2d 747 (1998); *Preslar,* 364 S.C. 466, 613 S.E.2d 381. An abuse of discretion occurs when the trial court's ruling is based on an error of law. *State v. McDonald,* 343 S.C. 319, 540 S.E.2d 464 (2000); *State v. Adams,* 354 S.C. 361, 580 S.E.2d 785 (Ct.App.2003). In order for an error to warrant reversal, the error must result in prejudice to the appellant. *See State v. Beck,* 342 S.C. 129, 536 S.E.2d 679 (2000); *see also State v. Wyatt,* 317 S.C. 370, 453 S.E.2d 890 (1995) (holding error without prejudice does not warrant reversal).

## *LAW/ANALYSIS*

### I.  Rule 106, SCRE

Patterson claims the trial court erred in admitting Richardson's entire statement to police on redirect examination.  We disagree.

The State and defense counsel agreed to take Richardson's testimony by video before trial.  Richardson testified that while she was talking to police on the night of Clark's murder, Patterson returned to the scene, walked up to Clark, pointed to her and said, "You see that right there?  I did that."  On cross-examination, defense counsel elicited from Richardson that she believed the accuracy of her account of the murder to police was very important.  Richardson indicated she carefully read her statement to police before she affixed her signature. Defense counsel then handed Richardson her statement and asked if Patterson's admission was included in the statement. Richardson conceded her statement to police did not include Patterson's admission.  On redirect examination, the State argued defense counsel had, by cross-examining Richardson on her statement, opened the door to admit Richardson's entire statement to police.  Despite objections from defense counsel that Richardson had merely been asked about an omission in the report, the trial court allowed Richardson to publish the statement in its entirety.

Significantly, Richardson's testimony on redirect examination was not played for the jury.  At trial, the defense stated:

> Ms. Pringle:  Your Honor, I'll go ahead and put on the record with respect to the next witness who is a Mary Richardson, **we have stipulated with the Solicitor's Office** previously that Ms. Richardson's testimony may be admitted by videotape, previously taped testimony 2002.  Your Honor, we of course obviously have no problem with the admission of the videotape in lieu of her testimony even though it is our understanding that she may be available to testify; with one caveat, Your Honor, that **we have agreed to cut the tape off at the end of cross-examination.**  Mr. Cathcart indicates that he is going to just walk right up there and turn it off as soon as the end of cross.

Mr. Cathcart: I believe the area she is talking about is the redirect by the State.

(Emphasis added.) The record indicates that the videotape was played for the jury. No objection was made at the conclusion of the taped testimony.

Initially, we note the issue of whether Richardson's statement to police was properly admitted into evidence is not properly before this Court. Pursuant to the parties' stipulation, the jury never heard Richardson publish her statement. Although counsel timely objected to publication of the statement at the time Richardson's testimony was being taped, at trial, the videotape was played without objection by the defense. Objecting to admission of a statement during pretrial video testimony does not preserve an issue for review. *Cf. State v. Fletcher*, 363 S.C. 221, 250, 609 S.E.2d 572, 587 (Ct.App.2005) (citing *State v. Forrester*, 343 S.C. 637, 647, 541 S.E.2d 837, 840 (2001); *State v. King*, 349 S.C. 142, 561 S.E.2d 640 (Ct.App.2002)). To preserve an issue for appellate review, a contemporaneous objection must be made when the evidence is offered. *See State v. Mitchell*, 330 S.C. 189, 193 n. 3, 498 S.E.2d 642, 644 n. 3 (1998) (citing *State v. Simpson*, 325 S.C. 37, 42, 479 S.E.2d 57, 60 (1996) ("Unless an objection is made at the time the evidence is offered and a final ruling made, the issue is not preserved for review.")); *State v. Johnson*, 324 S.C. 38, 41, 476 S.E.2d 681, 682 (1996) ("[A]ppellant made no contemporaneous objection at trial and did not raise this issue at any point during trial. Consequently, this issue is not preserved for review."); *State v. Schumpert*, 312 S.C. 502, 507, 435 S.E.2d 859, 862 (1993).

Adverting to the merits, we find the trial court properly ruled Richardson's statement to police was admissible. Rule 106, SCRE provides:

When a writing, or recorded statement, or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Rule 106 was promulgated by Order of the Supreme Court and became effective September 3, 1995. *See* Editor's Note, Rule 106, SCRE. The Rule restates the common law rule of

completeness with one significant change. Prior to the enactment of Rule 106, when part of a document, writing, or conversation was introduced into evidence, the opposing party could introduce the remainder of the communication. *See Dukes v. Smoak,* 181 S.C. 182, 186 S.E. 780 (1936). However, whereas under common law the opposing party was required to wait until cross-examination to complete the communication, under Rule 106, the party can now require introduction of the remainder of the statement contemporaneous with the original proffer. *See* Rule 106, SCRE.

As the South Carolina Supreme Court explained in *State v. Taylor,* "The text of Rule 106, SCRE, is substantially similar to Rule 106 of the Federal Rules of Evidence. Rule 106, Fed.R.Evid., is based on the rule of completeness and seeks to avoid the unfairness inherent in the misleading impression created by taking matters out of context." 333 S.C. 159, 170, 508 S.E.2d 870, 876 (1998) (internal quotation marks omitted) (quoting *Rainey v. Beech Aircraft Corp.,* 784 F.2d 1523, 1529 (11th Cir.1986)). The rule applies to oral communications as well as written statements. *State v. Cabrera–Pena,* 361 S.C. 372, 379, 605 S.E.2d 522, 526 (2004); *State v. Jackson,* 265 S.C. 278, 284, 217 S.E.2d 794, 797 (1975).

In *Cabrera–Pena,* the State elected to use a witness to elicit portions of the defendant's conversation. 361 S.C. at 380, 605 S.E.2d at 526. Our supreme court found the rule of completeness required the defendant to be permitted to inquire into the full substance of the conversation. *Id.* Similarly, defense counsel, by asking Richardson whether her statement to police included Patterson's admission, opened the door for the State to inquire into the full substance of her statement.

Patterson argues that because the inquiry referred to an alleged omission by Richardson as opposed to an affirmative declaration in the statement, Rule 106 does not apply. We disagree.

■ After eliciting testimony from Richardson regarding how careful she was in giving police a correct depiction of the events that led to Clark's murder, defense counsel in essence insinuated Richardson's statement to police was incomplete. The defense put Richardson's statement to police at issue, and fundamental fairness required the entire statement be admit-

ted into evidence. Patterson would have us construe Rule 106 in such a way that inquiries that probed at alleged omissions from a statement would not open the door to the admission of the statement. The purpose behind Rule 106 would be frustrated if the rule's application in a given case depended upon whether an alleged oral assertion was or was not in a written statement. We find the rule of completeness applies to insinuations, innuendos, and omissions. Thus, the trial judge properly admitted Richardson's statement.

Finally, even if the trial judge had erred in admitting the entire statement, Patterson has failed to demonstrate any resulting prejudice because the jury never heard the statement. An error not shown to be prejudicial does not constitute grounds for reversal. *See State v. Preslar*, 364 S.C. 466, 472–73, 613 S.E.2d 381, 384 (Ct.App.2005) ("A court's ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of discretion or the commission of legal error, which results in prejudice to the defendant.") (citations omitted); Rule 103, SCRE ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). The jury never heard the disputed portion of the videotape, and therefore, we cannot discern any prejudice to Patterson. *State v. Gathers*, 295 S.C. 476, 482, 369 S.E.2d 140, 143 (1988), *aff'd*, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989).

## II. Presence During Videotaping of Witness Testimony

Patterson argues the trial court erred by requiring his presence during the videotaping of Richardson's testimony. Patterson maintains he was severely prejudiced by Richardson's claim that he was smiling during the commission of the murder. We disagree.

Patterson made no objection after Richardson's video testimony was played for the jury, and, therefore, this issue is not preserved for review. To preserve an issue for appellate review, a contemporaneous objection must be made when the evidence is offered. *See State v. Mitchell*, 330 S.C. 189, 193 n. 3, 498 S.E.2d 642, 644 n. 3 (1998) (citing *State v. Simpson*, 325 S.C. 37, 42, 479 S.E.2d 57, 60 (1996) ("[U]nless an objection is made at the time the evidence is offered and a final ruling is

procured, the issue is not preserved for review.")); *State v. Johnson*, 324 S.C. 38, 41, 476 S.E.2d 681, 682 (1996) ("[A]ppellant made no contemporaneous objection at trial and did not raise this issue at any point during trial. Consequently, this issue is not preserved for review."); *State v. Schumpert*, 312 S.C. 502, 507, 435 S.E.2d 859, 862 (1993).

Even if the issue were properly preserved, we find the trial court did not err by requiring Patterson's presence during the videotaping of Richardson's testimony. Patterson's reliance on Rule 16, SCRCrimP is misplaced.

Rule 16, SCRCrimP provides:

Except in cases wherein capital punishment is a permissible sentence, a person indicted for misdemeanors and/or felonies may voluntarily waive his right to be present and may be tried in his absence upon a finding by the court that such person has received notice of his right to be present and that a warning was given that the trial would proceed in his absence upon a failure to attend court.

Apodictically, a criminal defendant has a constitutional right guaranteed by the Confrontation Clause of the Sixth Amendment to be present at trial. *See* U.S. Const. amend. VI; *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) ("One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial."). While Rule 16 permits a knowing and intelligent waiver of the right to be present, such a waiver is permitted only in limited circumstances. "A trial judge must determine a defendant voluntarily waived his right to be present at trial in order to try the case in abstentia." *State v. Truesdale*, 345 S.C. 542, 549, n. 5, 548 S.E.2d 896, 899, n. 5 (Ct.App.2001) (citing *State v. Ritch*, 292 S.C. 75, 76, 354 S.E.2d 909, 909 (1987); *State v. Jackson*, 288 S.C. 94, 95, 341 S.E.2d 375, 375 (1986); *State v. Castineira*, 341 S.C. 619, 622, 535 S.E.2d 449, 451 (Ct.App. 2000)). Additionally, the trial judge must make findings of fact that the defendant (1) received notice of the right to be present and (2) was warned the trial would proceed in his absence. *Jackson*, 288 S.C. at 95, 341 S.E.2d at 375; *Castineira*, 341 S.C. at 622, 535 S.E.2d at 451.

■ The right to be present at trial is not the right to be absent from trial. A criminal defendant has no absolute right to be absent during trial proceedings. In *State v. Moore*, the South Carolina Supreme Court held a defendant had no constitutional right to be absent from trial to prevent in-court identification. 308 S.C. 349, 351, 417 S.E.2d 869, 870 (1992). The court found the State has a corresponding right to have the defendant present, elucidating: " '[I]t is the right of the prosecution to have [the defendant] in the view of the presiding judge and jury, and the counsel engaged in the trial.' " *Id.* (quoting *State v. O'Neal*, 210 S.C. 305, 310–311, 42 S.E.2d 523, 525 (1947)). In some circumstances, a defendant may be presumed to waive or forfeit the right to be present by misbehaving in the courtroom or by voluntarily remaining away from trial. *State v. Shuler*, 344 S.C. 604, 625, 545 S.E.2d 805, 815 (2001); *State v. Bell*, 293 S.C. 391, 401, 360 S.E.2d 706, 711 (1987); *Ellis v. State*, 267 S.C. 257, 260–61, 227 S.E.2d 304, 305–06 (1976). However, even though a criminal defendant may waive or forfeit his right to participate in the proceedings, "a defendant has no contrasting right to be absent from trial, even when his absence might assist the defense." 5 Wayne R. LaFave, Jerold H. Isreal, Nancy J. King, *Criminal Procedure* § 24.2(b) (1999) (citations omitted).

■ The conduct of a criminal trial is left largely to the sound discretion of the trial judge, who will not be reversed in the absence of a prejudicial abuse of discretion. "The general rule in this State is that the conduct of a criminal trial is left largely to the sound discretion of the presiding judge and this Court will not interfere unless it clearly appears that the rights of the complaining party were abused or prejudiced in some way." *State v. Bridges*, 278 S.C. 447, 448, 298 S.E.2d 212, 212 (1982) (citing *State v. Sinclair*, 275 S.C. 608, 274 S.E.2d 411 (1981)); *Cf. State v. Tuckness*, 257 S.C. 295, 185 S.E.2d 607 (1971). Patterson's sole reason for desiring to be absent was his belief that he had a right to waive his presence. Although a criminal defendant has a constitutional right to be present during court proceedings, the defendant has no absolute corresponding right to be absent. The precedent extant edifies that a defendant may waive his right to be present in very limited scenarios. The trial court did not err by refusing

to allow Patterson to waive his presence at Richardson's video hearing.

Further, the alleged prejudicial statement was made during recross-examination and was not played for the jury. Patterson could not have been prejudiced by testimony the jury never heard. An error not shown to be prejudicial does not constitute grounds for reversal. *See State v. Preslar,* 364 S.C. 466, 472–73, 613 S.E.2d 381, 384 (Ct.App.2005) ("A court's ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of discretion or the commission of legal error, which results in prejudice to the defendant.") (citations omitted); Rule 103, SCRE ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). Therefore, we find Patterson cannot show he was prejudiced. *See Gathers* at 482, 369 S.E.2d at 143 (finding the duty is upon the defendant to prove prejudice.).

### III.  Jury Charge

Patterson contends the trial court erred in refusing to charge the jury on proximate cause because there was evidence Clark's death was due to her removal from life support. We disagree.

The law to be charged must be determined from the evidence presented at trial. *State v. Knoten,* 347 S.C. 296, 302, 555 S.E.2d 391, 394 (2001); *State v. Cole,* 338 S.C. 97, 101, 525 S.E.2d 511, 512 (2000); *State v. Lee,* 298 S.C. 362, 364, 380 S.E.2d 834, 835 (1989); *State v. Staten,* 364 S.C. 7, 40, 610 S.E.2d 823, 840 (Ct.App.2005). The trial court is required to charge only the current and correct law of South Carolina. *State v. Hughey,* 339 S.C. 439, 450, 529 S.E.2d 721, 727 (2000) (citing *Cohens v. Atkins,* 333 S.C. 345, 349, 509 S.E.2d 286, 289 (Ct.App.1998)); *see also State v. Zeigler,* 364 S.C. 94, 106, 610 S.E.2d 859, 865 (Ct.App.2005) ("Generally, the trial judge is required to charge only the current and correct law of South Carolina.") (citing *Sheppard v. State,* 357 S.C. 646, 594 S.E.2d 462 (2004); *State v. Burkhart,* 350 S.C. 252, 565 S.E.2d 298 (2002); *State v. Buckner,* 341 S.C. 241, 534 S.E.2d 15 (Ct.App. 2000)). "In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence

and issues presented at trial." *Zeigler,* 364 S.C. at 106, 610 S.E.2d at 865; *accord State v. Adkins,* 353 S.C. 312, 318, 577 S.E.2d 460, 463 (Ct.App.2003). A jury charge is correct if, when the charge is read as a whole, it contains the correct definition and adequately covers the law. *Adkins* at 318, 577 S.E.2d at 463–64.

To warrant reversal, a trial court's refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant. *State v. Reese,* 359 S.C. 260, 273, 597 S.E.2d 169, 176 (Ct.App.2004). "Failure to give requested jury instructions is not prejudicial error where the instructions given afford the proper test for determining issues." *Burkhart,* 350 S.C. at 263, 565 S.E.2d at 304. "If, as a whole, the charges are reasonably free from error, isolated portions which might be misleading do not constitute reversible error." *Zeigler,* 364 S.C. at 106, 610 S.E.2d at 865 (citing *State v. Sims,* 304 S.C. 409, 405 S.E.2d 377 (1991); *State v. Jackson,* 297 S.C. 523, 377 S.E.2d 570 (1989)). A jury charge which is substantially correct and covers the law does not require reversal. *State v. Foust,* 325 S.C. 12, 479 S.E.2d 50 (1996); *State v. Hoffman,* 312 S.C. 386, 440 S.E.2d 869 (1994).

Patterson relies on *State v. Matthews,* 291 S.C. 339, 353 S.E.2d 444 (1986), and *State v. Jenkins,* 276 S.C. 209, 277 S.E.2d 147 (1981), for the proposition that, at the very minimum, he was entitled to a jury charge on proximate cause.

The sixteen-year-old decedent in *Matthews* was shot in the head and pronounced dead after being transported to a hospital. Her kidneys were harvested and donated for transplantation. The appellant, Earl Matthews, argued the doctors prematurely declared the victim dead. Matthews maintained the removal of her kidneys was a superseding cause of death which relieved him of liability for her murder. 291 S.C. at 346, 353 S.E.2d at 448. The appellant conceded negligent medical treatment would not relieve him of liability; however, he argued declaring the victim brain dead and removing her kidneys did not constitute medical treatment. *Id.* at 346, 353 S.E.2d at 448–49. Matthews objected to the trial court's jury charge on the applicable law of proximate cause regarding medical treatment because he believed harvesting organs for transplanting did not constitute medical care. Our supreme

court disagreed: "The decision to declare a patient dead and to harvest organs for transplantation is clearly part of the care or duty that a doctor is responsible for providing. We hold that the actions of the doctor did constitute medical care." *Matthews*, 291 S.C. at 347, 353 S.E.2d at 449.

In *Jenkins*, the victim had a rare, fatal reaction to the dye used in performing an arteriogram—a common procedure administered to determine the extent of injuries to the major blood vessels. 276 S.C. at 210–11, 277 S.E.2d at 148. Evidence at trial showed the victim would have "survived absent the reaction, but that she would not have survived without medical treatment." *Id.* On appeal, Jenkins argued the trial court erred by failing to charge the jury on assault and battery with intent to kill and assault and battery of a high and aggravated nature. The court noted the appellant did not challenge the sufficiency of the evidence to sustain the murder conviction, and therefore the trial court committed "no prejudicial error in refusing to submit to the jury the two degrees of assault and battery." *Id.*

Unlike the present case, both *Jenkins* and *Matthews* involved a medical procedure between the appellant's crime and the victim's death. In *Matthews*, the appellant claimed the removal of the victim's kidneys was a superseding cause of death. In *Jenkins*, despite appellant's contention that the victim's reaction to the dye was the cause of death, the South Carolina Supreme Court found no prejudice in the trial court's failure to charge the jury as requested. The court found **"one who inflicts an injury on another is deemed by law to be guilty of homicide where the injury contributes mediately or immediately to the cause of the death of the other."** *Jenkins*, 276 S.C. at 211, 277 S.E.2d at 148 (emphasis added). In neither case did appellant argue, as Patterson here argues, that removal from life support was the intervening cause of death.

Because Clark showed signs of improvement, Patterson avers the doctors prematurely removed Clark's ventilator and feeding tube. The evidence shows Clark was operated on within thirty minutes of her arrival at the hospital due to the severity of her injuries. Dr. Raymond Bynoe testified when Clark was brought to the hospital, "she [had] lost at least a

third of her blood volume" and "had no spontaneous respiratory effort." Additionally, Clark's skull had an "eggshell type of appearance ... which meant that it was cracked in multiple places[.]" Dr. Clay Nichols, a forensic pathologist corroborated the severity of Clark's injuries, stating she sustained "such massive brain death and swelling that the dead brain tissue was ... actually oozing out of the open skull fracture." Clark's cause of death, in Dr. Nichols's opinion, was "[m]assive blunt head trauma due to beating with a pipe." The fact that she lived for a period of time after the beating had no effect as to the cause of her death and was in fact a "compliment to the medical treatment she received at Richland Memorial." Further, Dr. Nichols opined Clark would have "died within minutes of ... the injury" without medical attention.

"Courts have confronted whether a victim's removal from life support renders a homicide verdict against the weight of the evidence and have rejected the contention that there was insufficient evidence to support a conviction[.]" *State v. Pelham,* 176 N.J. 448, 824 A.2d 1082, 1091 (2003) (citing *State v. Fierro,* 124 Ariz. 182, 603 P.2d 74 (1979); *Porter v. State,* 308 Ark. 137, 823 S.W.2d 846 (1992); *People v. Saldana,* 47 Cal.App.3d 954, 121 Cal.Rptr. 243 (1975); *State v. Guess,* 44 Conn.App. 790, 692 A.2d 849 (1997), *aff'd,* 244 Conn. 761, 715 A.2d 643 (1998); *Johnson v. State,* 261 Ga. 236, 404 S.E.2d 108 (1991); *People v. Caldwell,* 295 Ill.App.3d 172, 229 Ill.Dec. 675, 692 N.E.2d 448 (1998); *Ewing v. State,* 719 N.E.2d 1221 (Ind.1999); *Carrigg v. State,* 696 N.E.2d 392 (Ind.Ct.App. 1998); *Spencer v. State,* 660 N.E.2d 359 (Ind.Ct.App.1996); *People v. Bowles,* 461 Mich. 555, 607 N.W.2d 715 (2000); *State v. Olson,* 435 N.W.2d 530 (Minn.1989); *State v. Meints,* 212 Neb. 410, 322 N.W.2d 809 (1982); *People v. Laraby,* 244 A.D.2d 946, 665 N.Y.S.2d 180 (N.Y.App.Div.1997), *aff'd,* 92 N.Y.2d 932, 680 N.Y.S.2d 898, 703 N.E.2d 756 (1998); *State v. Johnson,* 56 Ohio St.2d 35, 381 N.E.2d 637 (1978); *Eby v. State,* 702 P.2d 1047 (Okla.Crim.App.1985); *Commonwealth v. Kostra,* 349 Pa.Super. 89, 502 A.2d 1287 (1985); *State v. Ruane,* 912 S.W.2d 766 (Tenn.Crim.App.1995); *Felder v. State,* 848 S.W.2d 85 (Tex.Crim.App.1992), *cert. denied,* 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993)).

The trial court refused Patterson's jury charge on proximate causation, finding the mere fact Clark was withdrawn

from life support was not the cause of death. In *State v. Pelham*, the New Jersey Supreme Court noted "the widely recognized principle that removal of life support, as a matter of law, may not constitute an independent intervening cause for purposes of lessening a criminal defendant's liability." *Pelham*, 824 A.2d at 1092; *see also State v. Velarde*, 734 P.2d 449, 455–56 (Utah 1986) ("[R]emoval of the respirator was not the cause of death .... the neurological surgeon who performed the surgery on [the victim] after the assault, testified that blunt-instrument injuries were the cause of death."); *State v. Yates*, 64 Wash.App. 345, 824 P.2d 519, 523 (1992) ("When life support is removed, the cause of death is not the removal, but whatever agency generated the need for life support in the first instance."). Other courts have denied requests by defendants for jury instructions charging that a victim's removal from life support constitutes an independent intervening cause sufficient to relieve the defendant of criminal liability. *See, e.g., People v. Funes*, 23 Cal.App.4th 1506, 28 Cal.Rptr.2d 758 (1994); *In re J.N.*, 406 A.2d 1275 (D.C. 1979); *State v. Yates*, 64 Wash.App. 345, 824 P.2d 519 (1992) *reh'g denied*, 119 Wash.2d 1017, 833 P.2d 1390 (1992).

■ The trial court has a duty to instruct the jury only on an issue that is supported by the evidence. *Knoten*, 347 S.C. at 302, 555 S.E.2d at 394. We find the trial court did not err in failing to instruct the jury on proximate cause. The State's evidence clearly established Clark died from severe traumatic blows to the head. Under these facts, the removal of life support cannot be considered an independent intervening cause capable of breaking the chain of causation triggered by the defendant's wrongful actions.

## *CONCLUSION*

Accordingly, the conviction of the appellant for murder is **AFFIRMED.**

GOOLSBY and SHORT, JJ., concur.