**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Daniel Lopez, Appellant.

Appellate Case No. 2013-000903

Appeal From Greenville County
Letitia H. Verdin, Circuit Court Judge

Unpublished Opinion No. 2015-UP-216
Heard March 3, 2015 – Filed April 29, 2015

**AFFIRMED**

Appellate Defender Lara Mary Caudy, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Christina Catoe Bigelow, of Columbia; and Solicitor William Walter Wilkins, III, of Greenville, for Respondent.

**PER CURIAM:** Daniel Lopez appeals his convictions for trafficking cocaine and possession of a firearm with an obliterated serial number, arguing the trial court

erred in: (1) declining to suppress cocaine and a gun discovered during a traffic stop; and (2) refusing to grant a continuance and trying him in absentia. We affirm.

## I.  FOURTH AMENDMENT

Lopez argues the trial court erred in failing to suppress the cocaine and gun because the evidence was obtained as the fruits of an illegal search and seizure in violation of the Fourth Amendment. We disagree.

"South Carolina appellate courts review Fourth Amendment determinations under a clear error standard." *State v. Provet*, 405 S.C. 101, 107, 747 S.E.2d 453, 456 (2013). "When reviewing a Fourth Amendment search and seizure case, an appellate court must affirm if there is any evidence to support the ruling." *State v. Wright*, 391 S.C. 436, 442, 706 S.E.2d 324, 326 (2011).

The trial court did not abuse its discretion in declining to suppress the drugs and gun because Officer Chris Hines had a reasonable suspicion of a serious crime at the time he issued the citation. *State v. Morris*, Op. No. 27488 (S.C. Sup. Ct. filed Jan. 28, 2015) (Shearouse Adv. Sh. No. 4 at 45). Initially, we note, as many cases have found to be a critical factor, Officer Hines had several years of experience and over 1,000 hours of training in drug interdiction and investigation at the time he conducted the traffic stop. Moreover, aside from Hines' experience, Lopez demonstrated what has been categorized in our case law as the classic signs of drug trafficking. Lopez abruptly exited the highway as Hines approached him to commence the stop. Although all of Lopez's documentation was valid and in his name, Lopez provided *four different* addresses to Officer Hines, which "raised a red flag" based on Officer Hines' training. Additionally, Lopez was traveling on I-85, a "main pipeline" for drug trafficking, and three of the four addresses he provided surrounded Atlanta, a drug corridor or "hub city" for drugs.

During the stop, Lopez was excessively nervous, with an inability to calm down, even after being told he was only receiving a warning. Lopez was unable to maintain direct eye contact and engaged in "nervous chatter," stumbling over his words. In addition, Officer Hines testified he became suspicious because Hines believed Lopez attempted to befriend him by implying he worked for law enforcement. Lopez had a Gwinnett County police department patch taped to the dashboard by the vehicle identification number, which Hines "thought was kind of

odd considering most law enforcement agencies don't employ bouncers per se as a [j]ob title, which is what he was claiming to be for the county."

Further, Lopez provided several inconsistencies in his story, and his claims regarding his travel plans appeared to contradict Officer Hines' direct observations. For example, Lopez stated he was going to eat at McDonald's, but there was a McDonald's at the exit where Officer Hines first noticed Lopez. Lopez stated he was headed to Georgia; however, he was traveling in the opposite direction toward North Carolina. Although Officer Hines observed Lopez using a pay phone prior to stopping him, there were two cell phones in Lopez's car, one of which was turned on. Moreover, Lopez could not articulate his exact destination or the location from which he was returning.

Viewing the totality of the circumstances, we find Officer Hines had an objectively reasonable and articulable suspicion of illegal activity at the time he issued the traffic citation. Accordingly, the trial court correctly denied Lopez's motion to suppress the drugs and gun. *Id.*; *see also State v. Wallace*, 392 S.C. 47, 55, 707 S.E.2d 451, 455 (Ct. App. 2011) ("While none of these items independently amounts to a reasonable suspicion of criminal activity, blending each of these 'tiles' into the 'entire mosaic' of the totality of the circumstances, we believe Crompton had reasonable suspicion to detain Wallace while he walked the drug dog around the car. Thus, the trial [court] ruled correctly to deny the motion to suppress the cocaine.").

## II.    CONFRONTATION CLAUSE

Lopez argues the trial court violated his rights under the Confrontation Clause by refusing to grant a continuance and trying him in absentia. We disagree.

Pursuant to Rule 16, SCRCrimP, certain requirements must be met before a defendant may be tried in his absence. The trial court must determine the defendant voluntarily waived his right to be present at trial. *State v. Patterson*, 367 S.C. 219, 229, 625 S.E.2d 239, 244 (Ct. App. 2006). Additionally, the trial court must make findings of fact on the record that the defendant: (1) received notice of his right to be present; and (2) was warned the trial would proceed in his absence should he fail to appear. *Id.*

"Notice of the term of court for which the trial is set constitutes sufficient notice to enable a criminal defendant to make an effective waiver of his right to be present."

*City of Aiken v. David Michael Koontz*, 368 S.C. 542, 547, 629 S.E.2d 686, 689 (Ct. App. 2006). "However, if the record does not reveal that the defendant was afforded notice of his trial, the resulting conviction in absentia cannot stand." *State v. Fairey*, 374 S.C. 92, 100, 646 S.E.2d 445, 448-49 (Ct. App. 2007). "A bond form that provides notice that a defendant can be tried in absentia may serve as the requisite notice." *Id.* at 101, 646 S.E.2d at 449.

The State provided Lopez with adequate notice of his trial as the bond cards indicate the term of court for which the trial was set. Additionally, the State notified Lopez that trial may proceed in his absence. Similarly to the defendants in *Fairey* and *Koontz*, Lopez signed a bond sheet, wherein under the heading, "Acknowledgement By Defendant," it indicated Lopez understood a trial would proceed in his absence if he failed to appear. Further, the bond cards mailed to Lopez also state failure to appear may result in the trial being conducted in Lopez's absence. Despite his contentions, Lopez has pointed to no case law requiring the State to subpoena a defendant, only that the State is required to notify the defendant he may be tried in his absence, which the State did here.

Moreover, the fact that the State sent the bond cards to several different addresses is of no consequence as the bond sheet clearly requires Lopez to notify the court "promptly if he changes his address from the one contained in" the order. The State sent one of the bond cards to the address Lopez listed on his signed bond sheet, which was the last permanent address Lopez provided. *See id.* (finding the defendant received notice where the State mailed the notice to the last official, permanent address Fairey provided to the court and the State and Fairey failed to keep the court or the State informed of his change in address). Therefore, the trial court correctly proceeded with a trial in Lopez's absence after making appropriate factual findings on the issue of whether Lopez had notice of the trial and whether he was warned the trial would proceed in his absence. *See Ellis v. State*, 267 S.C. 257, 261, 227 S.E.2d 304, 306 (1976) ("The deliberate absence of a defendant who knows that he stands accused in a criminal case and that his trial will begin during a specific period of time indicates nothing less than an intention to obstruct the orderly processes of justice.").

**AFFIRMED.**

**SHORT and LOCKEMY, JJ., and CURETON, A.J., concur**.